UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────────

JEREMY S. EDSALL,

        Petitioner,

    -v-                      08-CV-0673(MAT)
                                        **ORDER**
LUIS R. MARSHALL, Superintendent of
Sing Sing Correctional Facility,

        Respondent.

────────────────────────────────

## I.   Introduction

*Pro se* petitioner Jeremy S. Edsall ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Steuben County Court of Robbery in the First Degree (N.Y. Penal L. § 160.15(4)) and Tampering with Physical Evidence (N.Y. Penal L. § 215.40(2)), following a jury trial before Judge Joseph W. Latham. Petitioner was sentenced to a determinate term of imprisonment of twenty years on the robbery count, concurrent to one and one-half to three years on the evidencing tampering count.

## II.  Factual Background and Procedural History

### A.   The Prosecution's Case

On July 13, 2004, Leesa Kio ("Kio") was working the overnight shift at the Econolodge motel in Gang Mills, New York. T. 270.[1] Sometime around 6:00 or 6:30 a.m., Kio was in a rear office behind

───────────

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing transcript.

the front desk of the motel. Through a security monitor, she saw a man walk into the lobby and behind the front desk. T. 272-73. He was wearing an olive-colored ski mask with eye and mouth holes. Petitioner then entered the office, holding two blankets in his arms. He pulled one aside to display a black gun, and asked Kio for money. T. 275. As she handed him the money, Kio noticed that the man was not wearing any gloves. T. 277-78.

Petitioner addressed Kio by her first name, despite the fact that she was not wearing a name tag. Kio suspected the man might know her.  T. 279, 302. Under his mask, Kio could see that petitioner had "big and buggy hazel" eyes, a fair complexion, and that his eyebrow had an orange or blonde tint. T. 279, 284. He was not very tall. T. 283. When petitioner gestured for her to keep quiet, she saw that he had a tattoo on his middle finger. T. 280-81. Kio later drew the tattoo's shape for police. T. 281-82, 300. She recalled that the tattoo was on his middle finger, below the knuckle, and had "a mushroom shape or a tooth shape."  T. 281.

Investigator Eric Tyner ("Inv. Tyner") of the Steuben County Police Department was called to the Econolodge after the robbery occurred. T. 379-81. There, he interviewed Kio, and gave the media the description that Kio had provided to him, including the finger tattoo, T. 382-84. Outside the motel, the investigator saw tire tracks that curved into the parking lot and exited onto the street

in the wrong direction. T 385. Those tracks were measured, as were tracks found in a grassy area in the parking lot. T. 387.

At trial, Kio testified that she did not know anyone by the name of Jeremy Edsall. She did, however, know his fiancee, Tracy Merrill ("Merrill"), as the two previously worked together at a Budget Inn. T. 290. Guest logs from the Econolodge indicated that Merrill had stayed at the motel two days in January, 2004 and once in December of 2003, despite that Merrill was on the motel's "do not rent" list since October, 2003. T. 318-20. Petitioner also stayed at the motel on August 15, 2003 and April 8, 2004. T. 316-18.

Neither petitioner nor Merrill were employed, however petitioner was collecting disability payments. T. 329, 336. Both lived with petitioner's grandmother, who, in July of 2004, gave petitioner money and loaned him her 2002 Buick Century. T. 327, 329, 330, 334-35, 365-66.

Petitioner and Merrill, both users of crack cocaine, regularly purchased their drugs from Toney Jones ("Jones") three to four times per week. T. 336-37, 341, 360-61. A few days before the robbery, Jones sold cocaine to petitioner on credit. T. 362. When petitioner did not pay Jones $200, Jones threatened to "whop" petitioner. T. 363. Two or three days later, on July 13, 2004, petitioner and his friend arrived at Jones' apartment between 8:00 and 8:30 a.m. T. 361-63. Petitioner handed Jones $130 or $140 in

cash. Petitioner told Jones that he had robbed somebody and had about $300 or $400 with him. T. 363-64. The three men then went to Jones' basement, where petitioner purchased and smoked more crack cocaine. T. 364.

Shortly thereafter, the group drove in a brown Buick century to Savona, New York, where petitioner's friend had a trailer. Once they arrived at the trailer, the three men smoked crack, drank beer, and watched television. T. 366-67. A report came on the news regarding the Econolodge robbery. According to Jones, petitioner "looked over" at Jones and looked to the television, "indicat[ing] that that's the place he had robbed." T. 366. Petitioner asked Jones not to mention the robbery to their friend. T. 367.

On July 14, 2004, petitioner's ex- wife learned of the robbery from the news and heard the description of the perpetrator's tattoo. T. 322-23. She immediately called Inv. Tyner to tell him that petitioner had skull-shaped tattoo on his finger. T. 324. That same day, the investigator saw petitioner in his grandmother's driveway in a Buick Century. The measurements of the tires on petitioner's grandmother's car were consistent with the tire tracks found in the motel parking lot. T. 388.

On July 15, 2004, petitioner and Merrill entered a tattoo shop run by Chris Heath ("Heath") and asked Heath to cover petitioner's finger tattoo. T. 343-45. Although Heath had heard about the robbery, he nevertheless applied skin-tone ink over the tattoo on

petitioner's finger. T. 354-57. Heath warned petitioner that the ink would not permanently cover the tattoo and the tattoo would essentially re-appear once the new tattooing had healed in a few days. T. 352, 357. Lee Keeney, an employee at the tattoo shop, watched Heath cover petitioner's tattoo. T. 354-57.

Petitioner was arrested on November 10, 2004, in the city of Hornell while attempting to purchase crack cocaine. T. 424. A crack pipe and $170 were recovered following a search of petitioner's person. T. 425. According to petitioner's online booking sheet, petitioner has hazel eyes and red hair, weighs about 145 pounds, has a light complexion and is 5'9"" or 5'10" tall. T. 402, 410-11.

### B.   The Defense

Jeffery Squires, an attorney, testified that he had represented petitioner in a worker's compensation proceeding. T. 442. Beginning in January, 2004, petitioner had received weekly payments of $75.38 from the Worker's Compensation Board. T. 442-43. Petitioner would receive that money until August 2, 2004, when he was due to receive a lump sum of $12,000. Petitioner became aware of the fact that he would receive the lump sum payment in May, 2004. T. 443-44.

Petitioner's grandmother testified that on July 5, 2004, she gave petitioner a check for $200, and another check on July 13, 2004, in the amount of $250. Since April, 2004, petitioner's grandmother had given petitioner approximately $11,920. T. 448-49.

Both Merrill and petitioner's grandmother testified that on July 13, 2004, around 7:00 a.m., petitioner was at home. T. 450. Although Merrill did not know where petitioner was between 5:30 and 7:00 a.m., she believed that they were both asleep in bed during that time. T. 464.

Merrill's friend, Michelle York, knew petitioner and Toney Jones. The defense sought to have her testify as to conversations she had with Jones, but the court would not permit her to testify further. T. 468-69.

### C.  Verdict and Sentence

The jury ultimately found petitioner guilty of first-degree robbery and evidence tampering. T. 627. On July 20, 2005, he was sentenced as a second felony offender to a term of imprisonment of twenty years for the robbery count, concurrent to an indeterminate term of one and a half to three years for the evidence tampering count. S. 13

### D.  Direct Appeal

Through counsel, petitioner appealed his conviction to the Appellate Division, Fourth Department, on the following grounds: (1) the trial court erred in admitting evidence of uncharged crimes; (2) prosecutorial misconduct; (3) legally insufficient evidence to support the conviction and the verdict was against the weight of the evidence; (4) ineffective assistance of trial counsel; (5) deprivation of a fair trial as a result of cumulative

errors; and (6) the sentence was harsh and excessive. Respondent's Exhibits ("Ex.") A. The Fourth Department unanimously affirmed the judgment of conviction. <u>People v. Edsall</u>, 37 A.D.3d 1100 (4th Dept. 2007), <u>lv. denied</u>, 9 N.Y.3d 843 (2007).

### E. Post-Conviction Relief

On August 20, 2008, petitioner moved to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10 ("the 440 motion"), on the grounds that: (1) the prosecutor knew or should have known that a witness committed perjury; (2) ineffective assistance of trial counsel; and (3) petitioner was denied his right to present a defense. Ex. H. A hearing on petitioner's 440 motion followed on September 29, 2008, after which the county court denied petitioner's motion based on the procedural bars set forth in N.Y. Crim. Proc. L. § 440.10(2)(a) and (2)(c). <u>See</u> 440 Hr'g Mins. dated 9/29/2008 (Ex. M); Ex. K. Though petitioner attempted to seek leave to appeal that decision, the Appellate Division rejected petitioner's motion on December 1, 2008, for petitioner's failure to comply with the court filing requirements. Ex. N.

The instant petition for habeas corpus followed, wherein petitioner seeks relief on the following grounds: (1) the trial court violated petitioner's right to present a defense; (2) the prosecutor failed to disclose information and knowingly used perjured testimony; (3) ineffective assistance of trial counsel; (4) the prosecutor improperly elicited evidence of petitioner's

uncharged crimes; (5) ineffective assistance of appellate counsel; and (6) the evidence was legally insufficient to support his conviction. Petition ("Pet.") ¶13(a), (b)-(f) (Attach.).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.  General Principles Applicable to Federal Habeas Review

#### 1.  Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

#### 2.  Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828

(2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054 (1995)."The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### 3.    Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

## B. Merits of the Petition

### 1. Right to Present a Defense

Petitioner first contends that he was denied his right to present a defense when the trial court precluded the testimony of an impeachment witness, Ernest Everly ("Everly")[2]. Pet. ¶13(a). Habeas review of this claim is precluded pursuant to the adequate and independent state ground doctrine.[3]

In denying petitioner's 440 motion, the county court rejected petitioner's "right to present a defense" claim because it was a matter that appeared in the record and could have been raised on

---

[2] The defense sought to call Everly, who was incarcerated with Toney Jones, to testify about conversations he had in jail with Jones regarding Jones' forthcoming testimony at petitioner's trial. T. 433-436.

[3] Petitioner raised this claim his 440 motion in state court. He did not, however, seek leave to appeal the county court's decision. Because the Appellate Division was not given the opportunity to review this claim, it is technically unexhausted. <u>See</u> <u>Pesina v. Johnson</u>, 913 F.2d 53 (2d Cir. 1990) ("[f]ailure to seek leave to appeal the denial of a § 440.10 motion to the Appellate Division constitutes failure to exhaust the claims raised in that motion."). Notwithstanding petitioner's failure to exhaust, the claim is subject to a procedural default under the adequate and independent state ground doctrine.

appeal, but was not. See N.Y. Crim. Proc. L. § 440.10(2)(c) (mandating that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record); Ex. M at 3-4.

Section 440.10(2)(c) has been deemed an adequate and independent state procedural ground barring habeas review. See Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003) ("Thus we conclude that Sweet's appellate counsel unjustifiably failed to argue this ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c). Accordingly, Sweet's claim is procedurally defaulted for the purposes of federal habeas review as well."); see also Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (holding that where the trial record provided a sufficient basis for the ineffective assistance claim premised on trial counsel's failure to object to a jury charge, such a claim did not fall within any of the exceptions noted by the New York courts for claims that are appropriately raised in a collateral motion for *vacatur* rather than direct appellate review); Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (holding that N.Y. Crim. Proc. L. § 440.10(2)(c) barred habeas review of a claim alleging ineffective assistance for failing to object on double jeopardy grounds because defendant

unjustifiably failed to raise the ineffective assistance issue on direct appeal).

Because there is an adequate and independent finding by the state court that petitioner procedurally defaulted the claim in his 440 motion, petitioner must show in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner does argue in a separate claim that his appellate counsel was at fault for failing to raise this particular claim on direct appeal, see infra at III.B.5, however, he cannot establish cause and prejudice because he has failed to exhaust an independent claim of ineffective assistance of appellate counsel by filing an application for writ of *error coram nobis* in the state court. See Edwards v. Carpenter, 529 U.S. 446 (2000). Further, petitioner has not attempted to make the showing of "actual innocence" required to qualify for the "fundamental miscarriage of justice" exception. See Schlup v. Delo, 513 U.S. 298, 314-16 (1995). Accordingly, the instant claim is procedurally barred from federal habeas review.

### 2. Use of Perjured Testimony

Petitioner next avers that Toney Jones testified under an undisclosed cooperation agreement and that the prosecutor permitted Jones' allegedly perjured testimony that no such agreement existed.

Pet. ¶13(b). As with petitioner's first claim, he has not properly exhausted the instant claim because he failed to seek leave to appeal the denial of his 440 motion to the Appellate Division. This claim was also rejected by the 440 court on the basis of § 440.10(2)(c). For the reasons stated above, see discussion at III.B.1, petitioner's due process claim is barred from habeas review by the state court's invocation of an adequate and independent state procedural rule.

Furthermore, petitioner does not allege establish cause and prejudice for his default. He cites no factor that inhibited his ability to assert the claim on direct appeal. See Murray, 477 U.S. at 492. Nor does he assert that he is "actually innocent" of the crimes for which he is convicted. See Schlup, 513 U.S. at 327. Accordingly, petitioner's second claim must be dismissed.

### 3. Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel was constitutionally ineffective because he: (1) failed to adequately argue against the preclusion of Ernest Everly's testimony; (2) failed to object to the admission of the tire track evidence; and (3) failed to cross-examine Jones about his efforts to blackmail Tracy Merrill from prison about an affair she was having. Pet. ¶13(c). With respect to grounds (1) and (2) above, those claims are subject to the same procedural bar discussed earlier, see supra at III.B.1., because the county court rejected those

contentions pursuant to an adequate and independent state procedural rule. See Ex. M, K; N.Y. Crim. Proc. L. § 440.10(2)(c).

Ground (3), regarding counsel's deficient cross-examination of Jones, was rejected by the Appellate Division on the merits and is thus reviewable in this habeas proceeding. See People v. Edsall 37 A.D.3d 1100 (4th Dept. 2007).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Here, petitioner has failed to demonstrate that his

counsel's conduct was deficient within the meaning of <u>Strickland</u>, and that, but for the deficiency, the result of his trial would likely have been different.

Decisions regarding "'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 732 (quoting <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987)). Accordingly, it is presumed that his attorney's conduct fell within the wide range of professional assistance unless petitioner can prove otherwise. <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984).

Petitioner complains that his attorney should have cross-examined Jones about his effort to blackmail Tracy Merrill. Specifically, petitioner contends that Jones threatened Merrill that he would tell petitioner that Merrill was having an affair if she did not put money in Jones' inmate account at the Steuben County Jail.[4] Pet. ¶ 13(c)(3).

His argument fails because he cannot show that his attorney's conduct was objectively unreasonable or that he was prejudiced by the absence of this testimony. Regardless of whether Jones was ultimately cross-examined on this specific subject, York's testimony on this point would not have been admissible. "[U]nder

---

[4] Counsel had unsuccessfully sought to have Michelle York testify to these circumstances, but the trial court determined that counsel was first obligated to question Jones about the alleged threat. T. 470-74. When counsel sought to call Jones, the court precluded Jones' testimony on the ground that counsel could not call a witness for the sole purpose of cross-examining him. T. 471-72.

New York evidentiary law, a party may not introduce extrinsic evidence on a collateral matter offered for the purpose of impeachment." <u>Alexander v. Ercole</u>, No. 06 CV 3377(JG), 2007 WL 922419 at *6 (E.D.N.Y. March 27, 2007) (citing <u>People v. Alvino</u>, 71 N.Y.2d 233, 247-48 (1987); <u>People v. Aska</u>, 91 N.Y.2d 979, 981 (1998)). Testimony that Jones threatened Merrill was unrelated to petitioner's guilt or innocence, and would thus be considered collateral. <u>See Alexander</u>, 2007 WL 922419 at *20 ("Here, the state court reasonably could have concluded that the statements of the victim that minimized her jealousy toward [the impeaching witness] were collateral to the facts at issue, because [the witness] was not alleged to have been present at any time during the relevant conduct."); <u>see also Calderon v. Keane</u>, No. 97 Civ. 2116(RCC), 2003 WL 22097504, *3 (S.D.N.Y. Sept. 9, 2003) ("The issue in each of these cases was whether he committed Attempted Murder in the First Degree and related charges. The testimony of the Petitioner's sister as to the conduct of Detective Capetta subsequent to the Petitioner's commission of the crimes is not probative to the issues presented in the case, nor does it indicate bias. . . . Therefore, the testimony was properly excluded.").

Moreover, petitioner cannot show that he suffered prejudice as a result of his attorney's alleged omission; Jones alleged blackmail of Merrill was unrelated to the motel robbery or to the

trial testimony of Merrill or Jones and would not have had an impact on the outcome of petitioner's trial.

In sum, the Appellate Division's determination was neither contrary to, nor an unreasonable application of Supreme Court precedent.

### 4. Prosecutorial Misconduct

Petitioner contends, as he did on direct appeal, that the prosecutor was guilty of misconduct in presenting testimony that petitioner tried to purchase drugs four months after his arrest. Pet., ¶13(d). The Appellate Division rejected petitioner's prosecutorial misconduct claim on the merits. Edsall, 37 A.D.3d at 1101.

In order to obtain habeas relief based upon the misconduct of a prosecutor, "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Rather, a constitutional violation will be found only when the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In deciding whether a defendant has suffered prejudice of due process proportions as a result of prosecutorial misconduct, courts have considered, (1) the severity of the misconduct; (2) the measures

adopted to cure the misconduct; (3) and the certainty of conviction absent the misconduct. See Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)) (internal quotation marks omitted)); accord United States v. Parker, 903 F.2d 91, 98 (2d Cir.1990).

In Blisset v. Lefevre, 924 F.2d 434 (2d Cir. 1991), the Second Circuit denied a habeas petition where a prosecutor's inappropriate remarks alluding to petitioner's prior criminal history did not carry a significant risk of inflaming or misleading the jury and did not cause petitioner substantial prejudice in view of the overwhelming evidence of his guilt. 924 F.2d at 440-441. Here, the trial court erroneously evidence that petitioner attempted to purchase drugs approximately four months after the robbery.[5] Assuming that the prosecutor's presentation of this evidence was improper, petitioner cannot establish that he would have been acquitted but for the misconduct. Other evidence that was properly admitted at trial established that petitioner was a regular crack c user, and the jury could have easily concluded that petitioner robbed the motel to satisfy an outstanding drug debt without considering his attempted drug purchase four months later. In light

---

[5] The Appellate Division found that the county court erred in admitting the evidence, "inasmuch as there was no evidence that defendant's drug use on that date was connected to the acts alleged in the indictment," but concluded that the error was harmless under the Crimmins/Chapman test. Edsall, 37 A.D.3d at 1100-01 (citing People v. Crimmins, 36 N.Y.2d 230, 237 (1975) (citing Chapman v. California, 386 U.S. 18, 22-24 (1967))).

of the other, substantial evidence of petitioner's guilt, it cannot be said that the prosecutor's introduction of this evidence "so infected the trial with unfairness." <u>See</u> <u>Donnelly</u>, 416 U.S. at 643; <u>Blisset</u>, 924 F.2d at 440-441.

The Court therefore finds that the Appellate Division's decision concerning petitioner's prosecutorial misconduct claim did not involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### 5. Ineffective Assistance of Appellate Counsel

Petitioner argues, for the first time in the instant petition, that his appellate counsel was constitutionally deficient for failing to argue the following points on appeal: (1) the trial court erred in precluding the testimony of Ernest Everly; (2) trial counsel was ineffective for not adequately arguing the admissibility of Everly's testimony; and (3) trial counsel was ineffective for not objecting to the tire track evidence. Pet., ¶13(e).

A habeas court may deny unexhausted claims on the merits despite petitioner's failure to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b)(2). The majority of district courts in this Circuit have followed a "patently frivolous" standard for denying unexhausted claims. <u>Colorio v. Hornbeck</u>, No. 05 CV 4984(NG)

(VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009) (citing <u>Brown v. State of New York</u>, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005) (citing Naranjo v. Filion, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003) (collecting cases)) (footnote omitted)), while a minority of district courts have exercised § 2254(b)(2) discretionary review when "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim[.]" <u>Hernandez v. Lord</u>, No. 00-CIV-2306, 2000 WL 1010975, at *4 n. 8 (S.D.N.Y. Jul. 21, 2000) (collecting and analyzing cases, internal quotation omitted). Another test that has been suggested in this Circuit is that unexhausted claims should be reviewed under a "heightened de novo standard." <u>King v. Cunningham</u>, 442 F.Supp .2d 171, 179 (S.D.N.Y. 2006). Regardless of the standard employed, petitioner's claim fails on the merits.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. <u>Mayo v. Henderson</u>, 13 F.3d 528, 533

(2d Cir. 1994) (citing <u>Claudio v. Scully</u>, 982 F.2d 798, 803 (2d Cir. 1992)), <u>cert. denied</u>, 508 U.S. 912 (1993).

To establish ineffective assistance of appellate counsel for failure to raise specific issues, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous that could be made. <u>Id.</u> Rather, counsel may winnow out weaker arguments on appeal and focus on one or two key issues that present "the most promising issue for review." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983). A habeas petitioner must demonstrate that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F.3d at 533.

An overall review of appellate counsel's work shows that petitioner received constitutionally effective representation under <u>Strickland</u>. Counsel raised a number of substantial arguments on appeal in a thorough, articulately drafted 47-page brief to the Appellate Division, which contained six points supported by state law and federal authority.  Ex. A. In that brief, counsel cited 80 cases in support of the opening arguments, which were well-reasoned and intelligently written, containing full citations to the record. Counsel also filed a 22-page reply brief of equal quality, and sought leave to appeal the most salient issues to the New York Court of Appeals.  Ex. D, F.

Moreover, it is worth noting that counsel was partially successful on appeal. The Fourth Department agreed with counsel that the county court erred in admitting evidence of an uncharged crime unrelated to the charges in petitioner's indictment. See Edsall, 37 A.D.3d at 1100-01. That the Appellate Division found the error to be harmless does not indicate any deficiency by appellate counsel, because the remaining evidence against petitioner was overwhelming. Id. at 1100-01, see infra at III.B.6.

In light of the circumstances presented in the record, it cannot be said that appellate counsel's representation "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, therefore this claim is denied because it is wholly meritless.

### 6. Sufficiency of the Evidence

In petitioner's final claim for habeas relief, he challenges the sufficiency of the evidence to support his conviction of first-degree robbery and evidence tampering. Pet., ¶13(f). The Appellate Division rejected this claim on the merits. Edsall, 37 A.D.3d at 1101.

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Comm'r of Corr. Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>
<u>v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). This
sufficiency-of-evidence "inquiry does not focus on whether the
trier of fact made the correct guilt or innocence determination,
but rather whether it made a rational decision to convict or
acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993).

A federal court reviewing an insufficiency-of-the-evidence
claim must look to state law to determine the elements of the
crime. <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999)
(citation omitted), <u>cert. denied</u>, 528 U.S. 1170 (2000).

In New York, Robbery in the First Degree requires proof that
a defendant forcibly stole property and, in the course of the
commission of the crime or of immediate flight therefrom, displayed
what appeared to be a "pistol, revolver . . . or other firearm."
N.Y. Penal L. § 160.15(4). A person is guilty of Tampering with
Physical Evidence when, "[b]elieving that certain physical evidence
is about to be produced or used in an official proceeding or a
prospective official proceeding, and intending to prevent such
production or use, he suppresses it by any act of concealment,
alteration or destruction . . . ." N.Y. Penal L. § 215.40(2).
"Physical evidence" is defined as "any article, object, document,
record or other thing of physical substance which is or is about to
be produced or used as evidence in an official proceeding." N.Y.
Penal L. § 215.35(1).

The evidence presented at trial can be summarized as follows: the motel clerk testified that someone with fair features and a slight build displayed a black gun and ordered her to give him money from the cash register. T. 275-78, 280-84. Her observations of his physical appearance matched petitioner's description on the online booking sheet, including a mushroom-shaped tattoo on his finger. T. 280-81. Petitioner's ex-wife reported to authorities that her ex-husband had a skull-shaped tattoo on his finger. T. 324. The tire tracks in the motel parking lot were consistent with the tires on petitioner's grandmother's car, which he often drove. T. 388. Petitioner also confessed to Toney Jones, to whom petitioner owed a drug debt. T. 363-66. His attempt to remove his finger tattoo after the robbery supports the conclusion that he was the same man with the middle-finger tattoo who robbed the motel and sought to avoid the use of the tattoo as evidence against him. From this evidence, a rational trier of fact could easily find the elements of both first-degree robbery and evidence tampering. The evidence was thus legally sufficient to support the conviction.

Finally, petitioner's argument that Jones was not a credible witness has no place in a habeas court's legal sufficiency analysis, as matters of credibility are left to the jury. See United States v. Reyes, 157 F.3d 949, 955 (2d Cir. 1998); Huber v. Schriver, 140 F.Supp.2d 265, 277 (E.D.N.Y. 2001) ("[F]ederal habeas courts 'are not free to reassess the [fact-specific] credibility

judgments by juries or to weigh conflicting testimony.... [A federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution.'") (quoting Vera v. Hanslmaier, 928 F.Supp. 278, 284 (S.D.N.Y. 1996)).

For the foregoing reasons, the Appellate Division's rejection of petitioner's legal sufficiency claim was not contrary to, or an unreasonable application of Jackson v. Virginia, and habeas relief is denied on this ground.

## IV. Conclusion

For the reasons stated above, Jeremy S. Edsall's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:     October 21, 2010
           Rochester, New York